FILED

2021 Mar-30  AM 10:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **BRANDON DEWAYNE FENNELL,** } | |
| } | |
| **Petitioner,** } | |
| } | |
| **v.** } | **Case No.:  5:18-cv-08002-RDP** |
| } | **5:15-cr-00274-RDP-HNJ-15** |
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **Respondent.** } | |

## MEMORANDUM OPINION

Brandon Dewayne Fennell ("Petitioner") is currently in the custody of the Bureau of Prisons serving a 120-month sentence after pleading guilty (pursuant to a plea agreement) to one felony count: Conspiracy to Possess with Intent to Distribute a Mixture and Substance Containing Cocaine Hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B). (Docs. # 372, 687 in *United States v. Lampkin*, 5:15-cr-0274-RDP-HNJ) (*i.e.* "Cr. Docs. # 372, 687"). Petitioner now moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his federal sentence.[1] (Docs. # 1, 23). The Motion has been fully briefed (*see* Docs. # 2, 7, 9, 10, 23, 24, 25, 31, 32, 33, 34) and is ripe for review. On January 21, 2021, the court conducted an evidentiary hearing on the Motion. (*See* Doc. # 30). After careful review, and for the reasons discussed below, the court concludes that Petitioner's Motion (Doc. # 23) is due to be denied.

## I.    Background

In August 2015, Petitioner was charged in a multi-defendant prosecution with two felony counts: (1) Conspiracy to Distribute and Possess with the Intent to Distribute a Mixture and

---

[1] After the court appointed counsel, Petitioner amended his § 2255 motion. (Docs. # 1, 23).

Substance Containing Cocaine Hydrochloride in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Count One); and (2) Knowingly and Intentionally Using a Communications Facility in Committing the Offense Set Forth in Count One in violation of 21 U.S.C. 843(b) (Count Twelve). (Cr. Doc. # 1). Petitioner retained James M. Smith as counsel in his criminal case. Smith replaced an attorney who had been court-appointed. (Cr. Doc. # 179).

The court conducted a consent hearing during which Petitioner pleaded guilty to the charge in Count One pursuant to a plea agreement. (Cr. Doc. # 372).[2] Petitioner stipulated to the following factual background in his plea agreement:

> In mid 2013, members of the Madison and Morgan County Strategic Counterdrug Team ("STAC"), a High Intensity Drug Trafficking Area ("HIDTA") designated task force and the Federal Bureau of Investigation ("FBI") began an investigation into a cocaine trafficking group headed by Marcus "Bubba" Lampkin. As part of their investigation, STAC and the FBI received information from various sources as to the drug activities of Lampkin as well as conducting their own surveillance. On February 18, 2015, the government sought and was granted a warrant to conduct wiretap operations on phone number (256) 221-2107 belonging to Lampkin. That wiretap was terminated on March 10, 2015. During this time period, FBI and STAG agents monitored Lampkin's phone line and conducted surveillance to confirm the information they were hearing. Numerous people, including Brandon Dewayne Fennell, were heard on the monitored phone line arranging drug deals.

> For example, during an intercepted phone call on March 1, 2015, at 2:55 PM (session 689), Fennell and Lampkin discussed a previous purchase of four ounces of cocaine (February 28, 2015, session 606). Fennell was complaining to Lampkin about the quality of cocaine, saying, "Man, I promise to God, I put just like half of a zip and just like a little shake, on everything. My girl was right there with me with whole time, we just sitting there talking, and the kids were asleep, it has happened before. I just say nothing, cause I didn't want you think I was complaining or nothing." Lampkin expresses doubt, because he doesn't usually have complaints about the quality of his product. Lampkin said, "When you selling powder like that, but them n***ers selling that crack don't say nothing about that." Lampkin asked Fennell multiple times how much cocaine he needs to give Fennell to make the situation right. Fennell tells Lampkin, "I was probably going to get some that I would just probably add with that, you know what I mean? ... Cause I will give you a couple dollars too, or whatever, you know what I mean. I just, if it would have come back dirty or something, I would have been fine with that, but shit it

---

[2] In exchange for entering into the plea agreement, the Government agreed to dismiss Count Twelve against Petitioner. (Cr. Doc. # 372).

wouldn't." At the end of the call, Lampkin tells Fennell he is out of town and will call him upon his return to Decatur.

During a phone call at 6:31 PM (session 719), Lampkin directs Fennell to go to "Tasha's" house. Agents monitoring the pole camera at Natasha Lampkin's residence observed an individual parked in front of the residence in a dark colored sedan. The driver exited the sedan and entered Lampkin's sedan. The driver was observed to be a black male with dreadlocks matching the appearance of Fennell. During an interview with Lampkin, he advised that the individual participating in this phone call was Fennell, and the purpose of this meeting was to provide Fennell with replacement cocaine, because Fennell had complained about the quality of cocaine that he had just purchased. Additionally, this phone number was listed for Fennell in a Decatur PD police report filed on November 27, 2014, by Fennell.

(*Id*. at 2-4) (all caps converted).

Petitioner's Plea agreement contained a cooperation provision and a substantial assistance departure provision. (*Id*. at 5-6). At his plea hearing, Petitioner acknowledged that he had agreed to cooperate with the Government, he had hoped to receive a sentencing departure in return for that cooperation, and he had understood what the Government expected from him by way of cooperation. (Cr. Doc. # 773 at 14-15). He also stated that he understood that he had to satisfy the Government that his cooperation rose to the level of substantial assistance before the Government would file a departure motion, and that the Government needed to file such a motion before the court could grant him a departure based on substantial assistance. (*Id*. at 14).

Petitioner's cooperation was particularly critical in his case because he was looking at a mandatory minimum ten-year sentence. In particular, Smith told Petitioner that, in Smith's view, without substantial assistance, he was looking at a mandatory minimum sentence if he pleaded guilty and that if he went to trial he would likely be convicted. (Doc. # 30 at 57, 63, 70). In either event, he would receive a ten-year sentence at minimum. (*Id*. at 63, 70).

After Petitioner pleaded guilty to Count One, the probation office prepared a Presentence Investigation Report ("PSR"), which calculated Petitioner's recommended guideline sentence

range to be 70 months to 87 months based on his total offense level of 21 and his category V criminal history.[3] (Cr. Doc. # 685 at 41). However, Petitioner's PSR also indicated his sentence should be enhanced to a mandatory minimum sentence of 10 years pursuant to 21 U.S.C. § 841(b)(1)(B) for either of his two prior drug felony convictions. (Doc. # 23; Cr. Doc. # 685 at 41). Thus, his guideline range calculated in the PSR was 120 months.[4] (Cr. Doc. # 685 at 41).

As discussed in more detail below, although Petitioner agreed to cooperate, he did not do so. (Doc. # 30 at 58-59). Petitioner did not file any specific objections to the PSR, and the court sentenced Petitioner to the mandatory minimum of 120-months imprisonment. (Cr. Doc. # 687). Petitioner did not file a direct appeal.

On February 5, 2018, Petitioner filed this motion (and thereafter an amendment to it) under 28 U.S.C. § 2255 claiming ineffective assistance of counsel. (Docs. # 1, 23).[5] Petitioner advances two main arguments in his motions. First, Petitioner contends that Smith rendered ineffective assistance before, during, and after Petitioner pleaded guilty. (Docs. # 2, 23). Second, Petitioner challenges the court's application of his prior state court convictions to enhance his sentence under 21 U.S.C. § 841(b)(1)(B). (*Id.*).

On January 21, 2021, the court held an evidentiary hearing. (Doc. # 30). There were three witnesses. Petitioner testified and also called his sister, Emily Fennell, as a witness. (*See* Doc. #

---

[3] Indeed, Smith told Petitioner before he agreed to cooperate and plead guilty that he would likely be looking at a sentence in the "high 60 to low 70 months" range if he cooperated and escaped the mandatory minimum. (*Id*. at 60).

[4] Petitioner's two qualifying prior drug felonies were convictions in the Morgan County Circuit Court on June 24, 2003 for unlawful possession of a controlled substance and on August 9, 2012 for possession of cocaine. (Cr. Doc. # 685 at 31-33). Because the mandatory minimum sentence exceeded Petitioner's calculated guideline range, the new recommended sentencing range became 120 months. (Cr. Doc. # 685 at 41). *See* USSG § 5G1.1(b).

[5] In Petitioner's amended § 2255 motion, he affirmatively withdrew his claim for ineffective assistance of counsel for failing to file a direct appeal and failing to consult with Petitioner about an appeal. (Doc. # 23 at 5). Plaintiff "persists in all other allegations and claims" included in his initial motion but omitted in his amended motion. (Docs. # 1, 2, 23 at 5).

32 at 3). The Government called Smith to testify. (Doc. # 30 at 53-90). The testimony at the hearing goes exclusively to the issue of the Smith's pre-guilty plea representation and Petitioner's decision to plead guilty. (*See id.*). Specifically, based on the record developed at the evidentiary hearing, Petitioner alleges that Smith's pre-guilty plea representation was deficient in three ways. First, he asserts Smith misrepresented to Petitioner that he would be sentenced to "no more than five years if he pleaded guilty" regardless of whether Petitioner offered substantial assistance to the Government in exchange for a motion for downward departure below the mandatory minimum sentence. (Docs. # 30 at 11; 32 at 10). Second, Petitioner contends Smith acted unreasonably by warning Petitioner that he "could get a significantly longer sentence [than the mandatory minimum] if [he went] to trial." (Docs. # 30 at 80; 32 at 10). Third, considering that the mandatory minimum sentence was the same if he pleaded guilty (but did not receive a downward departure for providing substantial assistance) or was convicted at trial, Petitioner claims Smith was ineffective by advising Petitioner to enter a guilty plea with "no perceptible benefit." (Doc. # 32 at 10).

## II.    Standard of Review

Section 2255 authorizes a federal prisoner to move in the court of conviction to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255(a). Such a motion is subject to heightened pleading requirements, which mandate that the motion must specify all the grounds of relief and state the facts supporting each ground. *See* Rules 2(c)(1)-(2), Rules Governing § 2255 Proceedings; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994). When a petitioner files a § 2255 motion, it is subject to a court's preliminary review, at which time the court is authorized to dismiss the motion summarily "[i]f it plainly appears from the motion, any attached exhibits, and

the record of the prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing § 2255 Proceedings. A petitioner is not entitled to a hearing or post-conviction relief when his claims fail to state a cognizable claim or amount to only conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible. *See Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001). Ultimately, habeas corpus is "an extraordinary remedy" available to those "whom society has grievously wrong[ed]" in the process of imposing a criminal conviction. *Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993) (citation omitted).

## III.   Findings of Fact

Based on the entire record, including the testimony presented at the evidentiary hearing, the court makes the following factual findings:

1.      After his indictment, Petitioner was initially represented by court-appointed counsel.

2.      Petitioner replaced his court-appointed counsel with retained counsel, James M. Smith.

3.      The Indictment alleged that Petitioner had one or more qualifying convictions that would subject him to a 120-month minimum mandatory sentence.

4.      The parties negotiated a plea agreement in this case.

5.      Petitioner reviewed the Government's plea agreement with his counsel, Smith.

6.      The agreement included a provision by which Petitioner agreed to cooperate with the Government in exchange for the Government filing a motion for downward departure under USSG § 5K1.1 and 18 U.S.C. § 3553(e). Petitioner discussed the agreement thoroughly with Smith.

7.      Prior to entering the plea agreement, Smith told Petitioner that if he proceeded to trial, in Smith's view he would be convicted and, in that event, his sentence would be the 120-month mandatory minimum sentence or longer. Smith told Petitioner he would likely receive a much longer sentence if he were convicted at trial than if he pleaded guilty and cooperated.

8.      The court discredits Petitioner's testimony that Smith represented to Petitioner that he could receive a sentence as low as five years without providing substantial assistance. The court also discredits Petitioner's claim that Smith told him he would receive a five-year sentence. Any discussion between Petitioner and Smith regarding Petitioner's sentence being less than ten years was in the context of Petitioner providing substantial assistance.

9.      Smith's statements that Petitioner could receive a longer sentence if he went to trial than if he pleaded guilty were made in the context of Petitioner agreeing to provide substantial assistance (and the Government filing a § 5k and § 3553(e) motion requesting that the court depart downward from the 120-month mandatory minimum sentence).

10.      After reviewing the plea agreement with Smith, Petitioner informed Smith that he would enter into the plea agreement, which contained the substantial assistance provision.

11.      Petitioner signed the agreement, appeared at his consent hearing, and knowingly and voluntarily pleaded guilty to Count One in the Indictment.

12.      Petitioner knowingly and voluntarily pleaded guilty without relying on, or being induced by, any promises or assurances made by anyone, including Smith, other than those contained in the plea agreement.

13.      Smith and the court discussed with Petitioner the sentencing guidelines, the non-binding nature of the guidelines, the mandatory minimum penalties, and the maximum penalties that applied in this case. The court told Petitioner (and he acknowledged that he fully understood)

that the court was not bound by any provision in the plea agreement and would impose a permissible sentence that it thought was appropriate, regardless of Petitioner's expectations or any representations made by anyone. Petitioner knowingly and voluntarily pleaded guilty with a full understanding of the consequences of his guilty plea.

14.   Petitioner acknowledged at his consent hearing that he was entering a plea pursuant to the plea agreement, understood its terms, and understood what he was obligated to do under the agreement (including that he needed to provide substantial assistance to the government in order for the court to depart downward below the 120-month mandatory minimum sentence).

15.   After pleading guilty, Petitioner attended two proffer sessions. He did not provide substantial assistance to the Government at either session. Thus, the Government did not file a motion for a departure.

16.   The case proceeded to sentencing and Petitioner was sentenced to the mandatory minimum sentence of ten years.

## IV.   Analysis

Before addressing Petitioner's arguments, the court notes that:

> [a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.

*United States v. Broce,* 488 U.S. 563, 569 (1989). Here, the record indicates that Petitioner's plea of guilty was knowing and voluntary. (*See* Cr. Doc. # 773 at 5-8, 12, 15-16, 17).

"The Supreme Court [has] held that 'the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Holmes v. United States*, 876 F.2d 1545, 1551 (11th Cir. 1989) (citation omitted). This two-part test asks: (1) whether the

defendant can show that counsel's representation fell below an objective standard of reasonableness; and (2) whether the defendant can show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)). With respect to the second requirement, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (citation omitted). And where, as here, "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Importantly, "[s]crutiny of counsel's performance is 'highly deferential,' and the court indulges a 'strong presumption' that counsel's performance was reasonable." *Reese v. United States*, 2018 WL 6495085, at *3 (M.D. Ala. Nov. 15, 2018) (citation omitted).

### A.     Ineffective Assistance of Counsel Claim

Petitioner claims that Smith provided ineffective counsel at all stages of his criminal proceedings. Petitioner asserts this challenge notwithstanding the fact that during his plea colloquy he affirmed that he was satisfied with Smith's representation and advice. (Cr. Doc. # 773 at 5). After conducting a hearing, the court is satisfied that Petitioner's claim boils down to his contention that he received ineffective assistance in the decision to plead guilty.

### 1.     Petitioner Asserts Five Grounds for His Ineffective Assistance of Counsel Claim, But Four of Those are Wholly Unsupported by the Record

Petitioner raised five grounds in his initial § 2255 Motion. He has incorporated those into

his Amended Motion. (Docs. # 2 at 2; 23 at 5). These grounds for relief include Smith's alleged failure (1) to inform Petitioner of the likely consequences of pleading guilty rather than proceeding to trial, (2) to conduct an adequate and independent pretrial investigation, (3) to negotiate a more favorable plea agreement, (4) to conduct an adequate and independent pretrial investigation, and (5) to render adequate representation before and during sentencing. (Docs. # 2 at 2; 23 at 5).

As discussed above, a habeas petitioner "is not entitled to relief if [his] claims are merely conclusory allegations unsupported by specifics, contentions that are wholly incredible on the face of the record, or so patently frivolous as to warranty summary dismissal." *Adams v. United States*, 2019 WL 4643730, at *1 (11th Cir. Aug. 20, 2019) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)). Except for Petitioner's allegations that Smith failed to adequately advise him about entering his guilty plea, there is nothing in the record that addresses or supports any of his other grounds for ineffective assistance of counsel. (*See* Doc. # 30). Rather, he has provided only unsupported conclusory allegations, such as Petitioner "do[es] not believe [Smith] conducted any independent investigation" into the validity of the Government's case. (Doc. # 23-1 at 10). Petitioner's ineffective assistance of counsel claims fail on grounds (2) through (5) for the simple reason that there is nothing in the record to justify the "extraordinary remedy" he requests here. *Brecht*, 507 U.S. at 634.

### 2.    Smith Rendered Effective Assistance of Counsel to Petitioner in Advising Him About Entering His Guilty Plea

Petitioner argues that Smith failed to provide effective assistance of counsel because "he encouraged [Petitioner] to give up his right to a trial and plead guilty to a drug charge, misadvising him that a conviction following a trial would likely result in a significantly longer sentence, when, in fact, pleading guilty did *nothing* to change the recommended sentence." (Doc. # 32 at 1) (emphasis added). After a thorough review of the record, the court concludes that Smith provided

effective counsel to Petitioner related to his guilty plea, and that Petitioner was not prejudiced by Smith's conduct. Rather, Petitioner has manufactured deficiencies in Smith's representation in an attempt to "undo" his decision to enter a guilty plea.

### a.    The Mandatory Minimum

Smith testified he told Petitioner that Petitioner faced a "mandatory minimum … [of] ten years" in the absence of substantial assistance. (Doc. # 30 at 64). Petitioner disagrees and contends that before his plea change hearing, Smith told Petitioner he would likely be sentenced to "no more than five years" if he pleaded guilty. (Doc. # 30 at 11). The court credits Smith's testimony and discredits that of Petitioner.

 Petitioner's testimony during his plea colloquy contradicts portions of his sworn testimony at the consent hearing. At his consent hearing, the following occurred:

> THE COURT: All right. What I want to do next is cover with you the penalties in this case. And, counsel, I do understand that I need to go over penalties under (b)(1)(B) in this case; is that correct?
>
> MR. SMITH: Yes, sir.
>
> ….
>
> THE COURT: Generally speaking, Mr. Fennell, a violation of this conspiracy statute based upon your conduct in this case would carry with it a custodial term of not less than 5 years, up to 40 years; a fine of not more than 5 million dollars; a supervised release term of not less than 4 years; and an assessment fee of $100 for that single felony count.
> In this case, because there is an indication that you have a prior qualifying conviction, those penalties change. And this, again, is without any cooperation, taking into account any cooperation. *A custodial sentence of not less than 10 years to life*; a fine of not more than 8 million dollars; *and a supervised release term of not less than 8  years*. Do you understand what I have just told you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: *Is that consistent with what you and Mr. Smith went over in terms of what your maximum and minimum penalties look like in this case*?
>
> THE DEFENDANT: *Yes, sir.*

11

THE COURT: *Do I need to give you any further explanation about minimum or maximum penalties?*

THE DEFENDANT: No, sir.

(Cr. Doc. # 773 at 12-16, 17-18) (emphasis added).

Petitioner attempts to reconcile his change of heart by explaining that he has answered truthfully in these § 2255 proceedings but incorrectly at the plea colloquy because "at the time [of his plea hearing], [he] thought [he] understood; but later, *after* sentencing, [he] realized that [he] didn't" because his experience serving "significantly shorter" sentences for those imposed by state courts led him to "belie[ve] … ten years didn't necessarily equal ten years." (Doc. # 30 at 42-45) (emphasis added).

However, Petitioner's after-the-fact explanation holds no water. Petitioner contradicted this explanation at the recent evidentiary hearing by testifying that he understood the sentencing consequences at the time he signed the plea agreement. For example, Petitioner explained that "once [he] saw the plea agreement" -- that is, *before* his plea hearing where he engaged in the plea colloquy and sentencing -- "[he] understood that a guilty plea would result in *a sentence of not less than ten years*" and that he "knew that what … Smith had said was wrong" with respect to Petitioner "pleading guilty to getting not more than five years." (*Id*. at 17).

The conclusion that Petitioner understood his actual sentencing exposure when he pleaded guilty makes sense. During the plea colloquy, the court made it abundantly clear that Petitioner would serve "a custodial sentence *of not less than* 10 years to life," and Petitioner confirmed that this was consistent with what Smith discussed with him. (Cr. Doc. # 773 at 17-18). After the court explained to Petitioner his sentencing exposure, the court offered Petitioner a second opportunity to address what he now asserts as a discrepancy between the court's description of his sentencing

12

circumstances and Smith's advice. (*Id*. at 23). But, Petitioner reaffirmed that nothing he "heard …

[at the plea hearing] … cause[d] [him] to reconsider [his] decision to enter a guilty plea." (*Id.*).

Smith verified all of this at the evidentiary hearing. (Doc. # 30 at 64). Based on the record as a

whole, Petitioner has failed to overcome the "formidable barrier" established by Petitioner's plea

colloquy testimony that Smith advised him he faced a mandatory minimum sentence of ten years.

*See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citation omitted).

### b.      The Failure to Provide Substantial Assistance

Petitioner argues, in the alternative, that even if Smith properly advised him that the

mandatory minimum sentence he faced was ten years (and, to be clear, this is precisely what the

court finds occurred), Smith rendered ineffective assistance of counsel by advising Petitioner that

he could receive "a significantly longer sentence if [he went] to trial" than if he pleaded guilty.

(Doc. # 32 at 10) (citing Doc. # 30 at 80). Petitioner argues that this advice was inaccurate, and he

entered a plea deal as a result of it. Petitioner contends his plea deal did not provide him anything

of perceptible value—*i.e.*, it did not give him anything "that improved his sentencing outlook at

all." (Doc. # 32 at 10) (citing Doc. # 30 at 80). This argument is a non-starter.

Any statement Smith made to Petitioner indicating that he faced a shorter sentence if he

pleaded guilty must be understood in the context of Petitioner agreeing to plead guilty *and* agreeing

to provide substantial assistance to the Government. (*See* Cr. Doc. # 372). Petitioner's plea

agreement contained a provision stating that if he provided substantial assistance to the

Government, then the Government would file a motion requesting the court to depart downward

from the mandatory minimum sentence. (*Id*. at 5-6). *See* 18 U.S.C. § 3553(e). With respect to

Smith's conversation with Petitioner regarding how his agreement allowed him to receive a shorter

sentence, Smith testified to the following:

Q. … And did you explain to him that [providing substantial assistance to receive a departure motion] was the only way he was getting under the ten years?

A. Yes, sir.

Q. Did you offer him an estimate of what he might be looking at as far as a prison sentence if he cooperated and the government found it to be substantial?

A. If the 5K motion was filed by the government -- and I made it clear. I made it clear to him. I make it clear to all my clients. The 5K motion is -- the government and only the government can file this motion to get under the mandatory minimum from 5K of the sentencing guidelines.

(Doc. # 30 at 60). Petitioner confirmed at the evidentiary hearing that Smith discussed his sentence exposure in the context of cooperation by answering the following:

Q. And you also understood about cooperation [at the consent hearing] because *not only had your attorney talked to you about it*, but also Judge Proctor had talked to you about it; correct?

A. *Correct*.

Q. Okay. And even after all that, *you still elected to enter a guilty plea*; is that right?

A. *Yes*.

(*Id*. at 30) (emphasis added). The record shows that Smith discussed Petitioner's sentencing outcome in the context of the potential for Petitioner to receive a lower sentence by pleading guilty *and* cooperating.

Importantly, this shows that Smith's advice that Petitioner would receive a longer sentence if he went to trial as opposed to accepting the Government's plea deal was not merely "effective;" it was absolutely correct. In fact, considering the mountain of inculpatory evidence against him, cooperating and providing substantial assistance appears to have been Petitioner's best (and perhaps only) option to improve his sentencing outlook. (Doc. # 32 at 14). *See Mitchell v. United States*, 2013 WL 6533348, at *13 (S.D. Ala. Dec. 13, 2013) (citing *Price v. United States*, 456 F. App'x 795, 798 (11th Cir. 2012)). Just because Petitioner "ultimately was *unable or unwilling* to

14

provide" substantial assistance in two different proffer sessions "does not render [his] [p]lea [a]greement meaningless or without benefit." *Forbes v. United States*, 2013 WL 4046330, at *7 (N.D. Ga. Feb. 13, 2013) (emphasis added). Thus, it was reasonable for Smith to seek a plea agreement from the Government, set up proffer sessions, explain to Petitioner the sentencing implications of the cooperation agreement, and inform him that he needed to cooperate for the court to even consider sentencing him to a term below the mandatory minimum. (Doc. # 30 at 57-59).

Petitioner contends further that because "Smith did not testify to anything suggesting that [Petitioner] could provide substantial assistance," the circumstances in this case show that Petitioner had no reason to enter the plea deal and did not receive any benefit from pleading guilty. (Doc. # 32 at 11) (citing *id*. at 12, 78-79). That argument holds no water. Petitioner knew what cooperation he could offer and what the Government expected. He knew others who were involved in the conspiracy. He could have disclosed their roles. He attended two proffer sessions with the Government and played cat-and-mouse games. (Doc. # 30 at 59, 77-78).

Again, the court covered all this at his plea hearing:

THE COURT: There's two more sections. One on page 5, one on page 6 I want to ask you about, cooperation by defendant and a motion pursuant to USSG Section 5K1.1 and/or 18 U.S.C. Section 3553(e). Do you see those two sections?

THE DEFENDANT: Yes, sir.

THE COURT: I want to make sure you understand that these are agreements -- *by signing the plea agreement with these sections in the agreement, you are agreeing to cooperate with the government.* You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And I'm sure you hope that your cooperation rises to the level of substantial assistance such that you get a sentencing break in this case, correct?

THE DEFENDANT: Yes, sir.

THE COURT: *But as your lawyer acknowledged a moment ago with what he said, you have to satisfy the government that your cooperation rises to the level of substantial assistance in order for them to file a motion with me for a sentencing departure.* Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And if you don't satisfy the government, the government won't file that motion. *If the government does not file that motion, I can't give you a departure based upon substantial assistance.* Do you understand that as well?

THE DEFENDANT: Yes, sir.

THE COURT: So the government holds the keys to that kingdom, if you will. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: *And do you understand what the government expects from you by way of cooperation in this case?*

THE DEFENDANT: Yes, sir.

(Cr. Doc. # 773 at 14-16) (emphasis added). At the time he entered his plea, Petitioner acknowledged he understood what the Government expected from him as far as cooperation and voluntarily agreed to provide that in the hope of reducing his sentence. (*Id.*). Petitioner's arguments do not overcome the "formidable barrier" of his own testimony during his consent hearing about his knowledge of the obligations and consequences of his plea agreement. *See Winthrop-Redin*, 767 F.3d at 1216 (citation omitted).

To put all this another way, when Petitioner pleaded guilty, he had three doors he could go through. Two of the doors Petitioner faced led to, at best, a 120-month sentence. Only the third door offered a realistic chance to avoid that statutory minimum. The first such door, going to trial, was in Smith's view likely to lead to a conviction. The second door was the one that Petitioner ultimately walked through—he pleaded guilty but did not provide substantial assistance. The third

door -- the only one that could lead to a sentence below the mandatory minimum -- remained open *only if* first Petitioner pleaded guilty and cooperated.

After Smith gave his advice, Petitioner initially opted to go through door three. But, just as soon as he stepped inside that door, he turned around and went back through door number two by failing to provide cooperation. That is why Petitioner received no perceptible benefit from his guilty plea.

### c.     The Discussion About the Possibility of an Upward Variance

At the recent evidentiary hearing, Petitioner's habeas counsel and Smith quibbled about whether Petitioner would have been in the same position or a worse one if he had gone to trial or pleaded guilty (without the benefit of a departure motion).[6] (Doc. # 30 at 68-75). But, that question, while interesting, again does not reflect the reality of what the parties faced before the plea agreement was signed and Petitioner pleaded guilty. (After all, the essence of Petitioner's claim is that he received ineffective assistance in relation to his guilty plea and decision not to go to trial.

---

[6] Regarding the quibbles, the court concludes that, in any event, Petitioner's allegations of Smith's erroneous predictions are not errors that rise to the level of a constitutional deficiency. It is true that "under certain circumstances, bad advice about the sentencing consequences of pleading guilty may constitute deficient performance." *Riolo v. United States*, 783 F. App'x 917, 922 (11th Cir. 2019); *see, e.g. Etheridge v. United States*, 287 F. App'x 806, 808 (11th Cir. 2008) (holding that counsel's assistance was "constitutionally deficient" where counsel incorrectly informed defendant that the government offered a plea deal); *United States v. Washington*, 619 F.3d 1252, 1259 (10th Cir. 2010) (emphasis omitted) (holding that counsel was deficient by "never in any way inform[ing] [petitioner] about the applicability … of relevant conduct … in the sentencing scheme"). However, those circumstances do not exist where, as here, counsel simply made a *prediction* that actually would have been accurate if Petitioner had cooperated. What is important is not whether counsel "deviated from best practices" or administered advice that was "unwise in retrospect" but whether "[the advice] was so patently unreasonable that no attorney would have" chosen the course of action that counsel took. *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007); *Gonzalez v. Jones*, 2015 WL 5144348, at *10 (S.D. Fla. Jan. 22, 2015) (citation omitted), *report and recommendation adopted*, 2015 WL 5156566 (S.D. Fla. Sept. 2, 2015). Smith testified that his experience in federal sentencing is that he has had "mixed results" with respect to whether "[j]udges tend to stick close to the guideline sentence." (Doc. # 30 at 82). His experience regarding the likelihood of an upward variance was not "patently unreasonable." (*See id.*). *Gonzalez*, 2015 WL 5144348, at *10; *see Griffin v. United States*, 2019 WL 7293587, at *5 (M.D. Fla. Dec. 30, 2019) (citation omitted) ("[C]ounsel's performance was not deficient in predicting, even mistakenly, what sentence would be imposed, or whether the sentence would be within or outside the advisory guidelines range."). All this is to say that Petitioner cannot use his § 2255 motion to "second-guess [Smith's] assistance after … an adverse sentence." *Gonzalez*, 2015 WL 5144348, at *10. Thus, based on this record, Petitioner has not overcome the "presumption" that Smith "perform[ed] reasonabl[y]." *Reese*, 2018 WL 6495085, at *3.

(*Id.* at 75)). At the time Petitioner entered his guilty plea, he was aware that, at any trial, (1) the Government would introduce recordings of him discussing drug transactions and (2) others in the conspiracy would testify against him. (*Id.* at 8-9, 11). Smith reviewed all of this with Petitioner and told him that, in Smith's view, he would be convicted at trial and face the ten-year mandatory minimum. (*Id.* at 63, 70). Smith explained that providing substantial assistance was the key to getting under the ten-year mandatory minimum sentence. (*Id.* at 58). That advice did not fall below the *Strickland* standard. It was directly on target. And, quite obviously, Petitioner listened to it. He agreed to cooperate, and he pleaded guilty. So, the question is not whether he would have been better off by pleading guilty or going to trial. The question is whether he would have been better off by pleading guilty *and providing substantial assistance* or going to trial. And, that really is the only question.

So, what went wrong? The answer is simple and undisputed. Petitioner did not cooperate. (*Id.* at 58-59). Smith set up a proffer session and explained to Petitioner what to expect and what would be required. (*Id.* at 59-60). At the proffer session though, Petitioner "seemed more interested in playing a cat-and-mouse game with the [G]overnment." (*Id.* at 59). In other words, Smith testified that Petitioner was more interested in trying to determine what the Government knew rather than what he should or could tell it. (*Id.*). Petitioner admitted aspects of his role in the conspiracy (buying cocaine, cooking it down, and selling it at strip clubs), but he did not provide the information the Government was seeking—who was up the supply chain. (*Id.*).

Smith asked for a second proffer session and was no doubt pleasantly surprised when the Government agreed. (*Id.* at 59-60). That second session occurred after the court had set the case for a sentencing hearing. (*Id.* at 59). But, it went no better. (*Id.* at 59-60). Without receiving the benefit of the cooperation he had agreed to provide, Petitioner proceeded to sentencing facing a

mandatory minimum.

### 3.  Smith's Advice Did Not Prejudice Petitioner

Even if he could show prejudice under *Strickland* (and, to be clear, he cannot), Petitioner was not prejudiced by Smith's advice in this case.  At the plea hearing, the court carefully explained to Petitioner the consequences of his guilty plea, including "the consequences of the plea agreement, [the] range of punishment, and [the] sentencing contingencies." (*See* Cr. Doc. # 773). *United States v. Wilson*, 245 F. App'x 10, 12 (11th Cir. 2007) ("[A]ny failure on the part of [the petitioner's] counsel to clearly explain the possible punishment was cured by the district court."). And, even though Petitioner testified that he was "depending on the advice [he] received from [Smith]," Petitioner stated at his plea colloquy that no one made *any* promises inducing him to enter a guilty plea:

> THE COURT: Based upon my explanation, do you understand the charge against you and the ranges of punishment available for that charge?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Other than the plea agreement -- I know we have talked a good deal about that already but put that aside in your mind for a moment -- *has anyone made any promise or assurance to you to cause you to cause plead guilty in this case?*
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone threatened or coerced you in any way to cause you to plead guilty in this case?
>
> THE DEFENDANT: No, sir.

(*Id*. at 19-20 (emphasis added); *see* Doc. # 30 at 36). Petitioner's testimony in the plea colloquy -- which, is presumed to be true -- shows that he did not enter his plea agreement based on any promise or assurance made by Smith or anyone else. Therefore, even if Smith erred (he did not), Petitioner has not shown any "reasonable probability" that he would not have pleaded guilty but

instead would have proceeded to trial. *See Hill*, 474 U.S. at 59 (citation omitted).

**B.      The Court's Application of a Mandatory Minimum Sentencing Enhancement**

Petitioner argues the sentence enhancement under 21 U.S.C. § 841(b)(1)(B) based on his prior state-court convictions is void under the Supreme Court's rulings in *Descamps v. United States*, 133 S. Ct. 2276 (2013) and *Mathis v. United States*, 136 S. Ct. 2243 (2016). In Petitioner's criminal proceedings, the Government submitted an Information under 21 U.S.C. § 851(a) detailing Petitioner's state convictions supporting a sentence enhancement under § 841(b)(1)(B): convictions in the Morgan County Circuit Court on June 24, 2003, for Unlawful Possession of a Controlled Substance[7] and on August 9, 2012, for Possession of Cocaine—both are felonies with sentences greater than one year. (Cr. Doc. # 685 at 31-33). At his sentencing, Petitioner affirmed that he was convicted of these sentences, and the court found that the sentencing enhancement applied under § 841(b)(1)(B). (Doc. # 715 at 2, 4).

The Supreme Court cases Petitioner cites are simply inapposite. *Mathis* decided the question of whether an Iowa burglary statute met the definition of a "violent felony" under the Armed Career Criminal Act ("ACCA"). *Mathis*, 136 S. Ct. at 2252-57; 18 U.S.C. § 924(e). But that decision says nothing about prior convictions for sentence-enhancing drug felonies, which is what is at issue in this case. Similarly, Petitioner cites *Descamps*, which also involved the ACCA, and is inapplicable. 570 U.S. 254 (2013); *see Reese*, 2018 WL 6495085, at *5 (citation omitted).

To the contrary, the Eleventh Circuit has held that a violation of Alabama Code § 13A-12-212 for drug possession qualifies as a felony drug offense for sentence enhancement under § 841(b)(1)(B). *United States v. Garrett*, 292 F. App'x 3, 7 (11th Cir. 2008). Specifically, under § 841(b)(1)(B) at the time Petitioner was sentenced, an enhanced sentence was appropriate

---

[7] In that case, the controlled substance was cocaine. (Cr. Doc. # 685 at 31).

following a prior conviction for a "serious drug offense," defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State…that prohibits or restricts conduct relating to narcotic drugs."[8] 18 U.S.C. § 802(44) (2012) (prior to the 2018 amendment). Here, Petitioner's sentence was enhanced for prior state convictions for violating Alabama Code § 13A-12-212 for felony possession of cocaine, a narcotic. *See* 21 U.S.C § 802(17)(D). Violations of that Alabama statute carry a sentence of not less than one year and one day. Ala. Code § 13A-12-212; *see Garrett*, 292 F. App'x at 7. Thus, the court properly enhanced Petitioner's sentence.

## IV.    Conclusion

Because Petitioner cannot satisfy either element of the two-pronged *Strickland* test, and because the court properly enhanced his sentence, his Motion (Doc. # 23) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this March 30, 2021.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[8] The First Step Act does not apply in this case because Petitioner was sentenced before the Act was enacted. FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat. 5194, 5221; *United States v. Pubien*, 805 F. App'x 727, 730 (11th Cir. 2020).